IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CEDRIC J. MILLER,                 §
                                  §
            Plaintiff,            §
                                  §
v.                                §        CIVIL ACTION NO. H-06-1101
                                  §
CITY OF RICHMOND, et al.,         §
                                  §
            Defendants.           §

**MEMORANDUM OPINION AND ORDER**

Cedric J. Miller, a jail inmate, has filed a section 1983 civil rights complaint against the City of Richmond Police Department, Richmond Police Sergeant Jesse Martin, Fort Bend County District Attorney John Healy, and Fort Bend County District Clerk Glory Hopkins alleging that he was subjected to an arrest and prosecution for a crime that he did not commit. The defendants have filed motions for summary judgment and dismissal. (Docket Entry Nos. 11, 15, 17, 20, and 21) Miller has not filed a response. After reviewing the pleadings and the records, the court finds that the motions should be granted in part, and this action should be dismissed.[1]

---

[1] Healy's Motion to Dismiss and Motion for Summary Judgment (Docket Entry Nos. 15 and 21) will be denied as moot because he has been previously dismissed pursuant to Miller's voluntary motion. (Docket Entry No. 18)

## I.  Claims and Allegations

Miller's claims and allegations are set out in his original Complaint Under 42 U.S.C. § 1983 (Docket Entry No. 1) and his More Definite Statement (Docket Entry No. 8), which were served on the defendants.  Miller complains that he was arrested for and falsely accused of a crime that he did not commit.  (Docket Entry No. 8, p. 1)  He asserts the following:

On July 26, 2004, Miller was at the residence of a friend's relative when two men, Delverick Gordon and Maurice Bledsoe, came running into the house.  (Docket Entry No. 1, p. 4; Docket Entry No. 8, p. 4)  The men were running because police officers were in close pursuit.  One of the fugitives evaded capture but the other was arrested under a warrant.[2]  Id.; Docket Entry No. 8, p. 1.  One of the police officers, Sergeant Martin, also arrested Miller and charged him with armed robbery even though there was no warrant for his arrest and no evidence that he had committed the crime.

Miller was then taken to Fort Bend County Jail and was later indicted in the 400th District Court of Fort Bend County, Texas. He remained in Fort Bend County Jail for 279 days.  Approximately sixteen months later, the charges were dismissed.  A detective told Miller about the dismissal; however, the police continued to stop and detain him looking for grounds to arrest him again.

---

[2]Miller contradicts himself in his More Definite Statement by stating that no warrant had been issued.  (Docket Entry No. 8, p. 4, Answer 16)

Miller admits to convictions in 1999 and 2002 but states that he was not on probation or parole at the time of his arrest. (Docket Entry No. 8, p. 3)  He further admits that he was later indicted for possession of a controlled substance in a drug free zone.  Id.  However, Miller denies that his arrest resulted in a conviction.  Id., p. 2.

Miller seeks an apology for the wrongful incrimination he endured.  (Docket Entry No. 1, p. 4)  He also seeks compensation for lost wages, and he seeks a dismissal of the controlled substance charges.

## II.  <u>Defendants' Arguments and Supporting Evidence</u>

In their Motion for Summary Judgment (Docket Entry No. 20), the City of Richmond and Sergeant Martin contend that Sergeant Martin had probable cause to arrest Miller.  They point to the circumstances at the time of the arrest and the evidence in support of the arrest including at least one positive witness identification.  The defendants assert that Sergeant Martin, an eleven-year veteran of the police force, was aware of the facts and circumstances that supported his decision to make the arrest.  They further assert that Sergeant Martin's action did not constitute a false arrest because the Fort Bend District Attorney presented the evidence to a grand jury, which then indicted Miller for aggravated robbery.  Defendants also assert that Sergeant Martin is entitled to qualified immunity because a reasonable officer could have

-3-

thought that the arrest was lawful in light of clearly established law.

The defendants also argue that the City of Richmond cannot be held liable because Miller suffered no constitutional injury at the hands of Sergeant Martin.  In support of their arguments, the defendants present evidence by affidavits and statements from Sergeant Martin and other persons involved in the arrest, the Incident Report for the arrest, photographs of the suspects, and Miller's indictment for aggravated robbery.  See Docket Entry No. 20, Exhibits.

Sergeant Martin was on duty the evening of July 26, 2004.  See Incident Report.  At approximately 11:20 p.m., he received a call from the dispatcher advising him that a robbery had occurred at 205 Collins in Richmond, Texas.  Richmond Police Officers Pavey, Alcala, and Evans interviewed the victims, Juan Penaloza and Bernardino Penaloza, at the scene of the robbery.  The victims told the officers that the suspects had taken money and a set of car keys from them when one of them had gone into a store located at 205 Collins in Richmond.  They then described the suspects as wearing black and blue clothing with one suspect having a cornrow hairstyle and carrying a cane.

Meanwhile, the dispatcher also informed the officers that the suspects were observed running west on Rocky Falls towards Brazos Street.  Armed with the information they had gathered, Evans and

-4-

Martin attempted to pursue the suspects.  Evans told Martin over the radio that he was chasing one of the suspects who was running up Brazos Street.  Evans then announced that the suspect was running away from him and was going toward Maiden Street.  Martin had traveled to Maiden and saw several black males, wearing black and blue clothing, in the driveway and parking area of 1705 Maiden. He also noticed that one of the suspects had a cane and a cornrow hairstyle.  At about the same time, Martin saw Evans chasing his suspect on foot.  The suspect managed to elude Evans by jumping a fence and ran south towards Rocky Falls.  Evans then gave up and joined Martin at 1705 Maiden where the two officers encountered the men who remained there.

Sergeant Martin recognized one of the suspects, Delvrick Gordon, and arrested him because he knew that a warrant had been issued for Gordon on another case.  Martin then turned his attention to the other subjects and identified them as Wendell Ellis, Brandon Fields, Kendrick Benson, Charles Williams, Eddie Shorty, and Cedric Miller.  Another individual, Jamal Martin, arrived later.

After securing the scene, Sergeant Martin radioed Officer Pavey and instructed him to bring the victims, Juan and Bernardino. When the Penalozas arrived, Martin lined up the suspects in the driveway so that the victims could view and identify them.  At that time, Bernardino identified Miller as one of the persons who committed the robbery.

-5-

Bernardino, using a translator, explained that he and Juan had driven to the store at 205 Collins.  See Martin's Affidavit, p. 3. Bernardino went into the store while Juan waited in the car outside.  Miller approached Bernardino in the store and asked him for money.   After Bernardino refused Miller's request, Miller followed him out of the store, repeated his request for money, and began frisking Bernardino as they approached Bernardino's car. Bernardino then felt what appeared to be a knife pressing against his side.   Miller took Bernardino's wallet and removed his keys from his car after killing the engine.  After hearing Bernardino's account, Sergeant Martin put Miller in a squad car.   Charles Williams was similarly placed in a separate squad car after Juan identified him as the person who had robbed him.

After obtaining a description of the stolen property including the currency (three $20.00 bills and ten $1.00 bills) the police officers first searched the suspects and other men with no results. They then searched around the area outside of the residence and discovered $69.00 in currency (three $20.00 bills and nine $1.00 bills) in the grass behind the residence.

Sergeant Martin then called the Fort Bend County District Attorney's Office and conferred with the Assistant District Attorney on call.  The Assistant DA advised Martin to charge Miller and Williams with robbery since they had been positively identified by the victims.  The two suspects were then taken to the Richmond

-6-

Police Department and later transported to the Fort Bend County Jail for booking.

Detective Dawson obtained statements from the other subjects, some of whom implicated Gordon and Bledsoe; however, at least one of the statements also implicated Miller. A full police investigation report was delivered to the Fort Bend District Attorney's Office for presentation to the Grand Jury, which returned an indictment against Miller on September 13, 2004. See Docket Entry No. 20, Exhibit 2.

The case against Miller was brought to court; however, there were numerous resets, which had been agreed to by Miller's counsel. See Affidavit of Fort Bend County District Attorney Michael J. Hartman, Docket Entry No. 21, Exhibit E, p. 4. By the time the criminal proceeding was set for trial, the State's primary complaining witness, Bernardino Penaloza, had left for Mexico, and the secondary witness, Juan Penaloza did not have enough personal knowledge about what transpired between Bernardino and Miller. Id. Consequently, the charges were dropped because there was no effective witness to testify in the State's behalf.

In separate motions (Docket Entry Nos. 11 and 17), Fort Bend County District Clerk Glory Hopkins moves for dismissal and summary judgment on the basis that she has had no personal involvement with Miller's arrest or the prosecution.

-7-

### III.   Summary Judgment Standards

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548, 2552 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003).   A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2510 (1986).   To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.   <u>Id.</u> at 2511.   The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from the record that demonstrate the absence of genuine factual issues.   <u>Celotex Corp.</u>, 106 S.Ct. at 2553; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).   Once the movant has met this burden, the non-movant must present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant.   <u>Stahl v. Novartis Pharmaceuticals Corp.</u>, 283 F.3d 254, 263 (5th Cir. 2002).

### IV.   Analysis

"Claims for false arrest focus on the validity of the arrest, not on the validity of the individual charges made during course of the arrest." <u>Price v. Roark</u>, 256 F.3d 364, 369 (5th Cir. 2001),

quoting <u>Wells v. Bonner</u>, 45 F.3d 90, 95 (5th Cir. 1995).  If a law enforcement official makes a warrantless arrest, the arrest must be based on "probable cause."  <u>Resendiz v. Miller</u>, 203 F.3d 902, 903 (5th Cir. 2000).  Probable cause exists if, at the time of the arrest, the totality of facts and circumstances known to the officer are sufficient for a reasonable person to determine that the arrestee had committed a criminal offense.  <u>Id.</u>  Although an officer must have more than mere suspicion of wrongdoing before he can make an arrest, he is not required to have sufficient evidence to support a conviction.  <u>United States v. Ho</u>, 94 F.3d 932, 935-36 (5th Cir. 1996).

Sergeant Martin was aware of numerous facts and circumstances that would have led a reasonable person to conclude that Miller had robbed the Penalozas.  Martin had gone in the direction in which the assailants had purportedly fled.  The victims described their assailants as wearing blue and black clothes and that one of them had a cane and a cornrow hairstyle.  Individuals in the group at 1705 Maiden fit that description.  When Bernardino Penaloza was brought to 1705 Maiden, he identified Miller as the individual who had actually taken his money.  Moreover, almost the exact amount of money, which had apparently been discarded by the perpetrator, was found nearby.

Bernardino's identification alone would have adequately supported Martin's decision to arrest Miller.  <u>United States v.</u>

-9-

Dougall, 919 F.2d 932, 934 (5th Cir. 1990).  The totality of facts and circumstances known to an experienced law enforcement officer such as Martin clearly support the arrest.  Resendiz, 203 F.3d at 904; see also United States v. Levine, 80 F.3d 129, 134 (5th Cir. 1996).  The fact that the charge against Miller was later dismissed does not alter this finding.  Ho, 94 F.3d at 935-36.

Apart from the facts and circumstances surrounding the arrest, the chain of causation regarding Martin's actions was broken by the grand jury's decision to indict Miller.  Murray v. Earle, 405 F.3d 278, 292 (5th Cir. 2005); Smith v. Gonzales, 670 F.2d 522, 526 (5th Cir. 1982) (independent decision by intermediary such as a grand jury breaks the chain of causation and insulates the initiating party).  The police investigation file was provided to the grand jury, which determined that there was probable cause to believe that Miller had committed a robbery.  This insulates Martin from any liability, regardless of his state of mind at the time of the arrest.  Taylor v. Gregg, 36 F.3d 453, 456 -57 (5th Cir. 1994), citing Hand v. Gary, 838 F.2d 1420, 1427 (5th Cir. 1988).

In addition, Miller has asserted the defense of qualified immunity.  Under well-settled principles of law, a government official's entitlement to qualified immunity is evaluated under a two-step analysis.  First, the court determines whether the plain-tiffs allege a violation of a constitutional right.  See Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001).  Second, if a

constitutional violation is alleged, the court determines whether the conduct at issue was objectively reasonable in light of clearly established law at the time the challenged conduct occurred.  Id. If reasonably competent officers could disagree over the legality of the arrest, the doctrine of qualified immunity should be applied.  See Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994). Consequently, even if Sergeant Martin mistakenly committed a constitutional violation, he would be entitled to qualified immunity if he acted reasonably.  Id.

As stated in the previous section, the alleged crime victim had positively identified Miller, and his clothes matched the description given by the victims before they saw him.  These facts alone would provide a sufficient basis for Sergeant Martin to have a reasonable belief that he had probable cause to arrest Miller, and therefore, he would be entitled to qualified immunity.  See Fontenot v. Cormier, 56 F.3d 669, 674 (5th Cir. 1995).  See also United States v. Dougall, 919 F.2d 932, 934 (5th Cir. 1995) (victim's description which matches suspect is probable cause for arrest).  Without a clear showing that the arrest was illegal, neither Sergeant Martin nor any other Fort Bend County official can be held to have knowingly violated Miller's constitutional rights when he was arrested.  See Saucier v. Katz, 121 S.Ct. 2151, 2156 (2001).  Consequently, Martin is also entitled to dismissal on the basis of qualified immunity.  Id. at 2160.

The City of Richmond and its Police Department are entitled to dismissal because there is uncontroverted evidence that Miller's arrest was not illegal and that no constitutional violation occurred.  See Alpha v. Hooper, 440 F.3d 670, 672 (5th Cir. 2006) (municipality and its police department cannot be held liable where there is a finding that the individual police officer did not violate the plaintiff's rights), citing Los Angeles v. Heller, 106 S.Ct. 1571, 1572-73 (1986).  In addition, Glory Hopkins will be dismissed because there is no indication that the Fort Bend County District Clerk was personally involved in Miller's arrest and detention.  See Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").  See also Anderson v. Pasadena Independent School Dist., 184 F.3d 439, 443 (5th Cir. 1999).

The defendants have presented evidence clearly demonstrating that there is no genuine issue of dispute regarding Miller's arrest and detention.  The record demonstrates that there was probable cause to arrest Miller and that Sergeant Martin, the City of Richmond and the City of Richmond Police Department cannot be held liable for such an arrest.  Moreover, Glory Hopkins is entitled to dismissal.

## V.  Conclusion

The Motions for Summary Judgment (Docket Entry Nos. 17 and 20) are **GRANTED**, and this action will be dismissed pursuant to FED. R.

-12-

Cɪᴠ. P. 56.  The Motion to Dismiss by Glory Hopkins, District Clerk of Fort Bend County, Texas (Docket Entry No. 11), is **DENIED** as **MOOT**.

The Motion to Dismiss by John F. Healy, Jr., District Attorney of Fort Bend County, Texas (Docket Entry No. 15), and Motion for Summary Judgment (Docket Entry No. 21) are **DENIED** as **MOOT** because Healy has been previously dismissed from this action.  See Docket Entry No. 18.

**SIGNED** at Houston, Texas, on this 11th day of April, 2007.

_____

SIM LAKE

UNITED STATES DISTRICT JUDGE
